## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**JEREMY A. JOHNSON,**
**DUANE MAYNARD,**
**NORMAN DILLON,**
**ALTON TRIBBLE,**
**TIMOTHY S. JACKSON,**
**WILLIAM WRAY,**
**STEVEN DAVIS,**
**WILLIE SLOCUM,**

   **Plaintiffs,**

**v.**            **Case N0. 3:14-cv-26429**

**SRT DIRECTOR AUSTIN BURKE;**
**WEST VIRGINIA REGIONAL JAIL**
**AND CORRECTIONAL FACILITY**
**AUTHORITY; WESTERN REGIONAL**
**JAIL; and CABELL COUNTY,**

   **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

   Pending before the Court is the initial screening of Plaintiffs' *pro se* complaint filed pursuant to 42 U.S.C. § 1983. (ECF No. 1). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **RECOMMENDS** that Plaintiffs' claims against Defendants West Virginia Regional Jail and Correctional

1

Facility Authority, Western Regional Jail, and Cabell County be **DISMISSED**, with prejudice. In addition, the undersigned **RECOMMENDS** that Plaintiffs' claim for prospective injunctive relief be **DISMISSED**, without prejudice.

## I.    Factual and Procedural History

On October 1, 2014, Plaintiffs filed their complaint alleging that they had been unjustifiably placed on lockdown for thirteen days (from July 18, 2014 to August 1, 2014) while confined at the Western Regional Jail ("WRJ") in Barboursville, West Virginia.[1] (ECF No. 1 at 4-5). Plaintiffs assert that the lockdown began after six inmates were involved in a fight on July 18, 2014. (*Id.* at 4). They describe the lockdown conditions as follows:

> [W]e were all denied showers for the first 100 hours, then we were given showers but they refused to give us soap, toothpaste, toothbrush, nothing! They refused us shift supervisors when asked. They also took away our 1 hour uncirculated air (outside rec). Also no mail of any sort, legal or not, incomming [*sic*] or going out. No phone calls not even our attorney. [*sic*] No visitation. No laundry service. No law library. The nurse's [*sic*] said we were not allowed to go to medical, for any reason.

(*Id.*)

Plaintiffs have brought suit against four defendants: (1) SRT Director Austin Burke ("Director Burke")[2]; (2) the West Virginia Regional Jail and Correctional Facility Authority ("the Authority"); (3) the WRJ; and (4) Cabell County (collectively, "Defendants"). (*Id.* at 1). They allege that Director Burke is responsible for instituting the lockdown without providing Plaintiffs with due process and for "imposing the

---

[1] It appears that only six of the plaintiffs signed the complaint (Johnson, Davis, Wray, Slocum, Jackson, and Dillon). (ECF No. 1 at 8). In addition, only six of the plaintiffs have filed applications to proceed without prepayment of fees or costs and authorizations to release institutional account information (Johnson, Maynard, Dillon, Jackson, Wray, and Davis). (ECF Nos. 3-14).

[2] Although Plaintiffs do not explain the "SRT" acronym, given the context of the lawsuit, the undersigned presumes that "SRT" means "Special Response Team."

barbaric regulations that the [WRJ] staff were forced to carry out." (*Id.* at 6). With regard to the Authority, Plaintiffs insist that the entity is liable for "allowing the system to operate" and for employing Director Burke. (*Id.*) Plaintiffs also maintain that the WRJ is responsible for neglecting to "stop ... the injustices" that they suffered and that Cabell County shares blame for placing Plaintiffs in the WRJ where these alleged injustices occurred. (*Id.*) In addition, Plaintiffs contend that they exhausted their administrative remedies by filing grievances "as far as [the WRJ] would allow [them.]" (*Id.* at 5).

Plaintiffs' complaint does not explain their custodial status at the WRJ during the time of the lockdown; however, after performing an inmate search on the West Virginia Regional Jail and Correctional Facility Authority website shortly after the complaint was filed, the undersigned was able to determine that all of the plaintiffs were pretrial detainees at the time that the complaint was filed.[3] As of the date of this PF&R, all of the plaintiffs have been released or transferred to different facilities, with the exception of Timothy Jackson, who is incarcerated at the WRJ as a West Virginia Division of Corrections offender.[4]

---

[3] By the time of the undersigned's search, Willie Slocum had been convicted in this Court of a number of felony offenses and sentenced to a term of imprisonment.

[4] The undersigned has been unable to precisely determine Johnson's whereabouts through various inmate search websites. Nonetheless, a January 4, 2015 article from the Herald-Dispatch indicates that a "Jeremy Austin Johnson" was arrested on the date of the article for allegedly violating conditions of home confinement.   http://www.herald-dispatch.com/news/briefs/x984731177/Five-jailed-on-felony-charges. Plaintiff Johnson's full name is Jeremy Austin Johnson. (ECF No. 3 at 1). With regard to the other plaintiffs, as of the date of this PF&R, Maynard is currently incarcerated at Mount Olive Correctional Complex in Mount Olive, West Virginia; Dillon is located at the Huntington Work Release Center in West Virginia; Tribble is located at the Federal Correctional Institute in Elkton, Ohio; as mentioned above, Jackson is incarcerated at the WRJ as a West Virginia Division of Corrections offender; Wray is incarcerated at the Potomac Highlands Regional Jail in Augusta, West Virginia, which is operated by the Authority; Davis is possibly incarcerated at the Federal Medical Center in Lexington, Kentucky, or he may have been released, but in any event, he is no longer incarcerated in a jail operated by the Authority; and Slocum is incarcerated at the Federal Correctional Institute in Bruceton Mills, West Virginia.

On the subject of relief, Plaintiffs first assert that they "would like to see steps taken to ensure this does not happen in the future, so that no one else has to go through what [they] did." (ECF No. 1 at 5). Second, they state that they "would like to see those responsible" for the lockdown conditions "held accountable and punished." (*Id.*) Finally, Plaintiffs request "monetary compensation for [their] unlawful punishment and suffering." (*Id.*)

## II.    <u>Standard of Review</u>

In order to maintain a *prima facie* case under 42 U.S.C. § 1983, Plaintiffs must show through factual allegations that they were (1) deprived of a right secured by the Constitution or laws of the United States, and that (2) the deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Pursuant to 28 U.S.C. § 1915A, the Court must screen each case in which "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss the case, or any part of it, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A case is "frivolous" if it lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), and lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when, viewing the factual allegations in the

4

complaint as true and in the light most favorable to the plaintiff, the complaint fails to contain enough facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In the event of a *pro se* complaint, the Court must liberally construe the allegations contained therein. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Even under this less stringent standard, the complaint must nevertheless contain sufficient factual allegations to support a cause of action that is cognizable in federal court. *Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990). The Court may not rewrite the complaint to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  Discussion

### A. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (2009) (quoting *Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 78, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

As a threshold issue, the undersigned must determine whether the WRJ and the Authority are arms of the State protected by Eleventh Amendment immunity. *See Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*."). In a number of past decisions, this Court has answered in the affirmative with regard to both entities. *Kinder v. PrimeCare Med., Inc.*, No. 3:13-31596, 2015 WL 1276748, at *2 (S.D.W.Va. Mar. 19, 2015) (dismissing the Authority and the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail*, No. 3:13-3293, 2014 WL 66645, at *1, *4 (S.D.W.Va. Jan. 8, 2014) (dismissing the Authority and the WRJ from § 1983 suit and adopting finding that the Authority and the WRJ are arms of the State for Eleventh Amendment purposes); *Regueno v. Erwin*, No. 2:13-cv-00815, 2013 WL 1837881, at *2 (S.D.W.Va. May 1, 2013) (finding the Authority is an "arm of the State" for Eleventh Amendment purposes); *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 728 F. Supp. 2d 803, 818 (S.D.W.Va.

6

2010) ("It is well established that the WVRJA is an agency of the State of West Virginia and is not a 'person' within the meaning of § 1983 for purposes of an action seeking money damages.")[5]; *Lavender v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 3:06-1032, 2008 WL 313957, at *3 (S.D.W.Va. Feb. 4, 2008) (granting the Authority's motion to dismiss § 1983 complaint against it on ground that the Authority is not a person amenable to suit under § 1983); *see also Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46 (4th Cir. 1996) (recognizing that the Authority is an "arm of the State" for Eleventh Amendment purposes); *Dement v. Summers Cnty. Courthouse*, No. 5:13-cv-08899, 2015 WL 461560, at *3 (S.D.W.Va. Feb. 3, 2015) (finding that Southern Regional Jail was not subject to § 1983 suit); *Roach v. Burke*, 825 F. Supp. 116, 118 (N.D.W.Va. 1993) (finding that the Authority is, "in effect, the State" and thus enjoys "the Constitutional immunity of the Eleventh Amendment"). Thus, the Authority and the WRJ are guaranteed immunity unless an exception to the Eleventh Amendment applies.

Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir.2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the

---

[5] In *Harter v. Vernon*, the Fourth Circuit discussed the interplay between personhood and the Eleventh Amendment:

> If an official or entity is not immune from suit under the Eleventh Amendment that official or entity is a "person" subject to suit under § 1983.... The opposite is also true, if the Eleventh Amendment applies, the entity or official is not a person under § 1983.... Therefore, federal courts should approach these issues solely under the rubric of the Eleventh Amendment, and should not consider an argument of "personhood" under § 1983.

101 F.3d 334, 338 n.1 (4th Cir. 1996).

state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988)) (markings omitted). Historically, the State of West Virginia has not waived its sovereign immunity in similar suits, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W.Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W.Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W.Va. 1992). Consequently, the waiver exception would not apply to this suit.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)). In *Will*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government ... unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L .Ed.2d 171 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person'

8

to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 601 (1991) (quoting *Will*, 491 U.S. at 65). Thus, the law is well-settled that Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004) (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W.Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth.*

*v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (citations omitted). Because the WRJ and the Authority are not state officers, but rather state entities or agencies, the third exception to Eleventh Amendment immunity is inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that lawsuit must name state official as defendant, not state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction"). In sum, since none of the three Eleventh Amendment immunity exceptions apply, the Authority and the WRJ are shielded by the Eleventh Amendment from Plaintiffs' § 1983 suit. Accordingly, the undersigned **FINDS** that Plaintiffs' claims against the WRJ and the Authority should be dismissed.

With respect to Director Burke's immunity under the Eleventh Amendment, Plaintiffs' allegations are, at best, unclear as to whether Director Burke is being sued in his official capacity or personal capacity. *See Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (recognizing that state official sued in official capacity may claim immunity under Eleventh Amendment). The Supreme Court has summarized the difference between official-capacity suits and personal-capacity suits: "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165-66 (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Different defenses apply to

each type of suit. For example, an official sued in his personal capacity may claim qualified immunity whereas an official sued in his official capacity may claim sovereign immunity, to the extent that the entity the official represents retains any Eleventh Amendment immunity. *Id.* at 166-67. Different forms of relief are also available for each type of suit. A state official sued in his official capacity enjoys the same immunity from money damages as the State, yet, a state official sued in his personal capacity cannot escape monetary liability on that ground. *Skaggs*, 2014 WL 66645, at *8 (citing *Hafer*, 502 U.S. at 25).

The determination of whether a defendant has been named in his official or individual capacity is generally made by examining "the face of the complaint." *Amos v. Md. Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998). Nonetheless, "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995). "When a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court

> stated that the defendant's assertion of qualified immunity as a defense
> indicates an individual capacity suit, since such a defense is only available
> in individual capacity suits.

81 F. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Plaintiffs have alleged that Director Burke "impos[ed] ... regulations" that the WRJ staff were required to follow, which led to Plaintiffs' purported injuries. Notably, Plaintiffs have not asserted that Director Burke was following a policy or custom created by any West Virginia entity. The complaint also reflects Plaintiffs' intent to collect compensatory damages for Defendants' conduct. Both of these facts tend to indicate that Plaintiffs are suing Director Burke in his personal capacity. On the other hand, Plaintiffs have not alleged that Director Burke has any authority to create government policy or custom, and it seems possible that Director Burke may have been following an existing policy in responding to the fight that occurred at the WRJ. Without more information, the undersigned cannot fairly ascertain whether Plaintiffs are suing Director Burke in his official or personal capacity. Thus, as set forth in the undersigned's contemporaneous order, Plaintiffs will be required to amend their complaint to clarify their allegations against Director Burke.

### B. Mootness of Plaintiffs' Request for Injunctive Relief

Next, the undersigned addresses the issue of whether Plaintiffs' changes in custodial status moot any of their claims for relief. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal

courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "'The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). Moreover, "[a]ny declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Id.*

Nevertheless, a prisoner's claim should not be dismissed as moot if there is sufficient evidence to conclude that the action is "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Under this exception, a claim that would otherwise be moot may be subject to judicial review if the facts of the case lead to a reasonable expectation that the same complaining party would be subjected to the same action again. *See Fed. Election Comm'n v. Wis.*

13

*Right to Life*, 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007) (stating that "capable of repetition" exception requires demonstrated probability that same controversy will recur involving same plaintiff). Where a plaintiff raises claims related to pretrial detention, the claims necessarily evade review given the temporary nature of the specific custodial status. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 249 (4th Cir. 2005). Nonetheless, mere conjecture that the prisoner may return to the correctional facility and again face the alleged wrong as a pretrial detainee is not enough to clear the mootness hurdle. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996); *see also Slade*, 407 F.3d at 249 ("Because we presume that [the plaintiff] will abide by the criminal laws of Virginia in the future, we do not believe there is a reasonable probability that he will return to the Jail as a pretrial detainee.").[6]

In this case, Plaintiffs' claims relate to their time spent as pretrial detainees at the WRJ. They are no longer pretrial detainees at the WRJ, or at any institution operated by the Authority. *See Adnan v. Santa Clara Cnty. Dep't of Corr.*, No. 4:02-CV-03451, 2002 WL 32058464, at *3 (N.D. Cal. Aug. 15, 2002) ("Because Plaintiff is now a convicted prisoner and is no longer being held in pretrial detention, his claim for injunctive relief with respect to this claim is moot"). The undersigned may presume that, if released from incarceration, Plaintiffs will not return to the WRJ or any institution under the control of the Authority as pretrial detainees. *Slade*, 407 F.3d at 249. Consequently, the undersigned **FINDS** that Plaintiffs' changes in custodial status render their claims for

---

[6] In *Slade*, the Fourth Circuit summarized an exception to the mootness doctrine in this context created by the Ninth Circuit "where the plaintiff introduces evidence that he has been detained 'on more than one occasion.'" 407 F.3d at 249 n.4 (citing *Demery v. Arpaio*, 378 F.3d 1020, 1027 (9th Cir. 2004)). The Fourth Circuit did not consider whether "such an exception would be appropriate" given the lack of evidence that the exception, if it existed in this circuit, would apply to the plaintiff's case. *Id.* Here too, the complaint does not allege that Plaintiffs have been pretrial detainees at the WRJ on multiple occasions.

14

injunctive relief moot.[7]

## C. Local Government Liability under § 1983

Plaintiffs have alleged that Cabell County is liable for their alleged injuries because the county "is responsible for placing [Plaintiffs] in the [WRJ]." (ECF No. 1 at 6). "Unlike states ... local governments, municipalities, and counties are considered 'persons' within the meaning of 42 U.S.C. § 1983, and 'may be sued for constitutional deprivations.'" *Alkire v. Irving*, 330 F.3d 802, 814 (6th Cir. 2003) (quoting *Monell*, 436 U.S. at 690-91); *see also Conley v. Ryan*, ____ F. Supp. 3d ____, 2015 WL 1180557, at *13 (S.D.W.Va. Mar. 13, 2015) ("Counties, like municipalities, are political subdivisions of a state that can qualify as a 'person' under Section 1983.") (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 485, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). A local government may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. "Pursuant to this standard, a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014). Allegations of vicarious liability or *respondeat superior* are insufficient to establish a § 1983 claim against a local government. *Connick v. Thompson*, ____ U.S. ____, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). "'To state a cause of action against a municipality, a section 1983 Plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or

---

[7] Given this finding, if Plaintiffs were to allege in their amended complaint that they are suing Director Burke in his official capacity without asserting that any mootness exception exists and applies, Plaintiffs suit would be destined to fail—Plaintiffs could only seek prospective injunctive relief against Director Burke in his official capacity, *Hawkins*, 540 U.S. at 437, and any request for injunctive relief would be moot for the reasons stated above.

custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right.'" *Fisher v. Morrison*, No. 2:13-cv-31140, 2014 WL 4418196, at *4 (S.D.W.Va. Sept. 8, 2014) (quoting *Alexander v. City of Greensboro*, 762 F.Supp.2d 764, 781 (M.D.N.C. 2011)).

Here, Plaintiffs have not alleged that the execution of a policy or custom fairly attributable to Cabell County proximately caused their asserted injuries, and thus their claim against the County is deficient on its face. *See Torchia v. Cherokee Cnty. Sheriff's Dep't*, No. 2:14-cv-00020-MR-DLH, 2015 WL 248280, at *3 (W.D.N.C. Jan. 20, 2015) (dismissing § 1983 claim for failure to allege any facts related to a policy, custom, or practice of defendant); *Fisher*, 2014 WL 4418196, at *4 (stating requirements for alleging § 1983 claim against municipality). Moreover, Plaintiffs have failed to indicate that Cabell County has any operative control over the WRJ and its staff. *See* W. Va. Code § 31-20-2(o) (stating regional jails are operated by the Authority); *id.* § 31-20-5(v)-(w) (providing the Authority with "responsibility for operation and management of regional jail facilities" and permitting the Authority "[t]o exercise all power and authority" necessary to "operate or oversee the operation of regional jails"); *id.* §§ 31-20-8, 31-20-9 (creating jail facility standards commission, which has the purpose of "assur[ing] that proper minimum standards and procedures are developed for jail facility operation, maintenance and management of inmates for regional jails"); *Morrell v. McFarland*, 527 F. Supp. 324, 327 (N.D.W.Va. 1981) (before creation of the Authority, recognizing that county commissioners had no "legal authority" to control "day-to-day operation of" Pleasants County, West Virginia jail). Where "the county has no control over policy within the jail, it bears no concomitant responsibility." *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999); *see also Cobb v. S.C.*, No. 2:13-cv-02370-RMG, 2014 WL 4220423,

16

at *7 (D.S.C. Aug. 25, 2014) (dismissing § 1983 suit against county where detention center was not under direct control of county). Consequently, the undersigned **FINDS** that Plaintiffs' claims against Cabell County are without merit and should be dismissed.

### D. Conditions of Confinement Claim against Director Burke

Given the undersigned's findings that the WRJ, the Authority, and Cabell County should be dismissed from this suit, and that Plaintiffs' request for prospective injunctive relief is moot, all that remains is Plaintiffs' conditions of confinement claim seeking monetary damages against Director Burke.[8] Plaintiffs allege that they were placed on lockdown for thirteen days after a fight occurred at the WRJ. (ECF No. 1 at 4). During the first four days of the lockdown, Plaintiffs assert that they were not permitted to shower. (*Id.*) On day five, when Plaintiffs were allowed to shower, they were not given any personal hygiene items (e.g., soap or toothbrush), and this lasted for the duration of the lockdown. (*Id.* at 4-5). Along with personal hygiene items, outside recreation time, sending and receiving mail, making telephone calls, receiving visitors, receiving laundry services, visiting "medical," and using the law library were all unavailable to Plaintiffs during the lockdown. (*Id.* at 5). Plaintiffs insist that they endured "unlawful punishment" and that Director Burke placed them on lockdown without due process. (*Id.* at 5-6). The Fourth Circuit has divided somewhat analogous pretrial detainee claims into two categories, those that arise under substantive due process and those that arise under procedural due process. *See Slade*, 407 F.3d at 250-554. The undersigned addresses each in turn.

---

[8] The undersigned presumes for this portion of the PF&R that Plaintiffs are suing Director Burke in his personal capacity.

### 1. Substantive Due Process

At the time of the lockdown, Plaintiffs were pretrial detainees. Consequently, their claims relating to the conditions of their confinement are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which applies to convicted inmates. *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Slade*, 407 F.3d at 250. "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir. 1988). As the Fourth Circuit has explained:

> While a convicted prisoner is entitled to protection only against "cruel and unusual" punishment, a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description. However, not every hardship encountered during pretrial detention amounts to "punishment" in the constitutional sense. In order to establish that a particular condition or restriction of detention constitutes constitutionally impermissible "punishment" a detainee must show either 1) an "expressed intent" to punish or 2) a lack of a reasonable relationship "to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred."

*Hill v. Nicodemus,* 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin*, 849 F.2d at 870) (citations omitted); *see also Slade*, 407 F.3d at 251 (reaffirming use of test set forth in *Hill* for pretrial detainee cases); *Robles v. Prince George's Cnty., Md.*, 302 F.3d 262, 269 (4th Cir. 2002) ("In the absence of an actual intent to punish, however, the due process determination turns on whether the 'pretrial detention is reasonably related to a legitimate governmental objective' or 'if it is arbitrary or purposeless.'") (quoting *Bell*, 441 U.S. at 539). "An action may be reasonably related to a legitimate governmental purpose if 'an alternative purpose to which [the act] may rationally be connected is assignable for it' and the action does not appear 'excessive in relation to the alternative

18

purpose assigned.'" *Robles*, 302 F.3d at 269 (quoting *Bell*, 441 U.S. at 538) (bracketed language in original). In determining whether a pretrial detainee's conditions of confinement amount to punishment, a court should consider all of the conditions in combination, rather than condition-by-condition. *Lock v. Jenkins*, 641 F.2d 488, 491-92 (7th Cir. 1981).

The Fourth Circuit has described the pretrial detainee punishment inquiry as one that arises under the doctrine of substantive due process. *Slade*, 407 F.3d at 250-52. While some federal courts of appeals have superimposed the cruel and unusual punishment test for Eighth Amendment claims contained in *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), onto various due process claims brought by pretrial detainees, the Fourth Circuit has not done so in a precedential decision where a detainee has raised claims similar to those raised by Plaintiffs in this case.[9] *See* David C. Gorlin, Note, *Evaluating Punishment in Purgatory: The Need to Separate Pretrial Detainees' Conditions-of-Confinement Claims from Inadequate Eighth Amendment Analysis*, 108 Mich. L. Rev. 417, 426 n.54 (2009) (describing circuit split in applying *Farmer* test to pretrial detainee conditions of confinement claims); *compare Slade*, 407 F.3d at 250-52 (solely relying on *Bell* standard in analyzing pretrial detainee's claim that one dollar per day fee charged to detainees violated substantive due process), *and Brown v. Faggart*, No. 1:09-CV-573, 2013 WL 316152, at *3 n.4 (M.D.N.C. Jan. 28, 2013) (noting that Fourth Circuit applies *Bell* standard to pretrial

---

[9] In *Farmer*, the Supreme Court held that to state a plausible claim for cruel and unusual punishment under the Eighth Amendment, a prisoner's allegations must meet two requirements. 511 U.S. at 834. First, the deprivation must be "objectively, sufficiently serious," such that the prison official's "act or omission result[s] in the denial of the minimal civilized measure of life's necessities." *Id.* (citations and markings omitted). Second, "a prison official must have a sufficiently culpable state of mind," or more specifically, the prison official must have a state of mind that is deliberately indifferent "to inmate health or safety." *Id.* (citations and markings omitted).

detainee conditions of confinement claims), *with Brown v. Harris*, 240 F.3d 383, 388-89 (4th Cir. 2001) (applying *Farmer* test to pretrial detainee's claim that prison officials were deliberately indifferent to detainee's serious medical needs). Even if a pretrial detainee's conditions of confinement may be considered punishment, the Supreme Court has recognized that there is still "'a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)); *see also Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (stating that Constitution "is not concerned with a *de minimis* level of imposition on pretrial detainees.") (citing *Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996)) (markings omitted); *Rogers v. Shoaf*, No. 1:07CV326, 2010 WL 2629519, at *11 (M.D.N.C. June 28, 2010) (recognizing that "pretrial detainee must show that the challenged condition imposed restrictions of sufficient severity to implicate the Constitution."); *Cabbagestalk v. S.C. Dep't of Corr.*, No. 3:08-2718-SB-JRM, 2009 WL 3007381, at *3 n.4 (D.S.C. Sept. 18, 2009) (adopting report and recommendation wherein magistrate judge recommended dismissal of pretrial detainee's claims because detainee's injury was *de minimis*); *cf. Hill v. Crum*, 727 F.3d 312, 318-19 (4th Cir. 2013) (recognizing pretrial detainee must allege more than *de minimis* injury as result of excessive force).[10]

Assuming that a valid claim of unconstitutional punishment is alleged by a pretrial detainee, the Prison Litigation Reform Act (PLRA) "places limitations on the

---

[10] The Supreme Court granted certiorari and heard oral arguments this term on the issue of the appropriate standard for federal courts to apply to pretrial detainee claims of excessive force. *Kingsley v. Hendrickson*, ____ U.S. ____, 135 S.Ct. 1039, 190 L.Ed.2d 908 (2015). The transcript of oral argument may be accessed at: http://www.supremecourt.gov/oral_arguments/argument_transcripts/14-6368_5426.pdf

ability of prisoners to recover damages in civil suits."[11] *Carrington v. Easley*, No. 5:08-CT-3175-FL, 2011 WL 2119421, at *3 (E.D.N.C. Feb. 8, 2011) (citing 42 U.S.C. § 1997e(e)). Section 1997e(e) of the PLRA commands that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Nonetheless, the PLRA does not "prevent an inmate from seeking nominal damages for these injuries, even where there is no physical injury." *Jones v. Price*, 696 F. Supp. 2d 618, 624 (N.D.W.Va. 2010); *see also Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) (same); *Carrington*, 2011 WL 2119421, at *3 (same); *McKinney v. Johnson*, No. 2:09-1353-JFA-RSC, 2010 WL 3463110, at *3 (D.S.C. Sept. 2, 2010) (same). Where a person's due process rights are violated, and additional injury (other than being subjected to a violation of a constitutional right) is not shown, nominal damages are an appropriate remedy. *See, e.g.*, *Gray v. Spillman*, 925 F.2d 90, 93-94 (4th Cir. 1991) (recognizing availability of nominal damages in § 1983 action where no proof of injury other than suffering deprivation of constitutional right and collecting cases); *Taylor v. Jordan*, 922 F.2d 836, 1991 WL 70, at *3 (4th Cir. Jan. 2, 1991) (unpublished table decision) ("This Court has held that although the *de minimis* nature of a constitutional violation may affect the amount of damages, it may not limit the right of action.").

Applying the standards set forth in *Bell, Hill*, and *Slade*, the undersigned concludes that Plaintiffs have stated a plausible substantive due process claim. Plaintiffs have alleged that they were in lockdown conditions for thirteen days and that this was a result of Director Burke's intent to punish Plaintiffs. While the lockdown may have

---

[11] Pretrial detainees fall within the PLRA's definition of prisoner. 42 U.S.C. § 1997e(h).

served the legitimate government objective of restoring control after the fight occurred, the length of time of the lockdown, at this stage in the proceedings, at least raises a colorable claim that the lockdown was punitive. *Cf. Miller v. Powers*, No. 6:08-4177-HF, 2009 WL 255983, at *1, *5 (D.S.C. Feb. 2, 2009) (granting prison official's *motion for summary judgment* on pretrial detainee's conditions of confinement claim where detainee was subject to eleven-day lockdown because *record evidence* demonstrated that lockdown was based upon security needs and desire to maintain order). Furthermore, although the conditions alleged might be insufficient when piecemealed, that is not the appropriate inquiry; when viewing the conditions *in toto*, and in light of the length of the lockdown, Plaintiffs' substantive due process claim is neither frivolous, malicious, nor implausible. *Cf. Kibwika v. Broward Cnty. Sheriff's Office*, 453 F. App'x 915, 919 (11th Cir. 2012) (holding plaintiff "failed to state a plausible claim for relief because he provided no factual allegations which, if accepted as true, show that jail officials imposed the lockdown for the purpose of punishment."). In addition, as mentioned above, Plaintiffs have specifically alleged that these conditions were imposed to punish them. While Plaintiffs have not alleged any *per se* physical injury as a result of the conditions that they experienced during the lockdown, as discussed above, the suit may proceed on the basis that at least nominal damages are available for Plaintiffs' claim.[12] Accordingly, the undersigned **FINDS** that Plaintiffs' complaint contains a plausible claim that Director Burke violated their substantive due process rights.[13]

### 2. Procedural Due Process

Turning to Plaintiffs' allegations that they were placed in lockdown without due

---

[12] Moreover, Plaintiffs may produce evidence during discovery that they were actually injured.

[13] The undersigned's contemporaneous order details how this claim may proceed.

process, and affording the complaint liberal construction, Plaintiffs have asserted a procedural due process claim. The Due Process Clause of the Fourteenth Amendment mandates that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Pretrial detainees possess a liberty interest in being free from punishment. *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007); *Surprenant v. Rivas*, 424 F.3d 5, 17 (1st Cir. 2005); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002); *United States v. Cobb*, 905 F.2d 784, 788 (4th Cir. 1990); *Dean v. Thomas*, 933 F. Supp. 600, 607 (S.D. Miss. 1996). Before a pretrial detainee may be punished, typically he is entitled to "notice and an opportunity to be heard." *Higgs*, 286 F.3d at 438. Here, Plaintiffs assert that they were punished when placed in lockdown, and that they were not afforded the due process protections to which they were entitled before being subjected to lockdown conditions. The undersigned **FINDS** that these allegations are sufficient to state a plausible procedural due process claim against Director Burke.[14]

## IV.    Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that Plaintiffs' claims against Defendants West Virginia Regional Jail and Correctional Facility Authority, Western Regional Jail, and Cabell County be **DISMISSED**, with prejudice. In addition, the undersigned **RECOMMENDS** that Plaintiffs' claim for prospective injunctive relief be **DISMISSED**, without prejudice.

---

[14] The undersigned's contemporaneous order details how this claim may proceed.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, the Defendants, and any counsel of record.

**FILED:** May 15, 2015

Cheryl A. Eifert
United States Magistrate Judge