## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JEREMY A. JOHNSON,
DUANE MAYNARD,
NORMAN DILLON,
ALTON TRIBBLE,
TIMOTHY S. JACKSON,
WILLIAM WRAY,
STEVEN DAVIS,
WILLIE SLOCUM,

      **Plaintiffs,**

v.                                          **Case NO. 3:14-cv-26429**

SRT DIRECTOR AUSTIN BURKE, et
al.,

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Defendant Austin Burke's Motion to Dismiss for Insufficient Service of Process, (ECF No. 34), and Plaintiff Alton Tribble's Motion to Certify a Class Action and to Desinate [*sic*] this as the Multidistrict HQ, (ECF No. 38), and Motion to Strike, Overrule and/or to Reserve Burke, (ECF No. 39). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Burke's Motion to Dismiss for Insufficient Service

of Process be **DENIED, without prejudice**; Tribble's Motion to Strike, Overrule and/or to Reserve Burke be **DENIED**; Tribble's Motion to Certify a Class Action and Desinate [*sic*] this as the Multidistrict HQ be **DENIED**; and the claims of Plaintiffs Jeremy A. Johnson, Duane Maynard, William Wray, Steven Davis, and Willie Slocum be **DISMISSED, without prejudice**, for failure to prosecute and failure to follow a court order.

## I.     Factual and Procedural History

On October 1, 2014, Plaintiffs filed their complaint alleging that they had been unjustifiably placed on lockdown for thirteen days (from July 18, 2014 to August 1, 2014) while confined at the Western Regional Jail ("WRJ") in Barboursville, West Virginia.[1] (ECF No. 1 at 4-5). Plaintiffs asserted that the lockdown began after six inmates were involved in a fight on July 18, 2014. (*Id.* at 4). They described the lockdown conditions as follows:

> [W]e were all denied showers for the first 100 hours, then we were given showers but they refused to give us soap, toothpaste, toothbrush, nothing! They refused us shift supervisors when asked. They also took away our 1 hour uncirculated air (outside rec). Also no mail of any sort, legal or not, incomming [*sic*] or going out. No phone calls not even our attorney. [*sic*] No visitation. No laundry service. No law library. The nurse's [*sic*] said we were not allowed to go to medical, for any reason.

(*Id.*)

Plaintiffs brought suit against four defendants: (1) SRT Director Austin Burke ("Burke")[2]; (2) the West Virginia Regional Jail and Correctional Facility Authority ("the Authority"); (3) the WRJ; and (4) Cabell County (collectively, "Defendants"). (*Id.*

---

[1] It appears that only six of the plaintiffs signed the complaint (Johnson, Davis, Wray, Slocum, Jackson, and Dillon). (ECF No. 1 at 8).

[2] Although Plaintiffs do not explain the "SRT" acronym, given the context of the lawsuit, the undersigned presumes that "SRT" means "Special Response Team."

at 1). They alleged that Director Burke is responsible for instituting the lockdown without providing Plaintiffs with due process and for "imposing the barbaric regulations that the [WRJ] staff were forced to carry out." (*Id.* at 6). With regard to the Authority, Plaintiffs insisted that the entity is liable for "allowing the system to operate" and for employing Director Burke. (*Id.*) Plaintiffs also maintained that the WRJ is responsible for neglecting to "stop ... the injustices" that they suffered and that Cabell County shares blame for placing Plaintiffs in the WRJ where these alleged injustices occurred. (*Id.*) In addition, Plaintiffs contended that they exhausted their administrative remedies by filing grievances "as far as [the WRJ] would allow [them.]" (*Id.* at 5).

As for relief, Plaintiffs first asserted that they "would like to see steps taken to ensure this does not happen in the future, so that no one else has to go through what [they] did." (*Id.* at 5). Second, they stated that they "would like to see those responsible" for the lockdown conditions "held accountable and punished." (*Id.*) Finally, Plaintiffs requested "monetary compensation for [their] unlawful punishment and suffering." (*Id.*)

On May 15, 2015, the undersigned issued Proposed Findings & Recommendations after conducting a complaint screening pursuant to 28 U.S.C. § 1915A. (ECF No. 16). The undersigned recommended that the Authority, the WRJ, and Cabell County be dismissed, and that Plaintiffs' claim for prospective injunctive relief be dismissed as well. (*Id.* at 1-2). With respect to Burke, the undersigned found that Plaintiffs' complaint was unclear as to whether they were bringing suit against Burke in his official capacity or personal capacity. (*Id.* at 10). Presuming that Plaintiffs were suing Burke in his personal capacity, the undersigned determined that Plaintiffs had

alleged a plausible due process claim against Burke.[3] (*Id.* at 22-23). The same day, the undersigned entered an order directing Plaintiffs to file updated Applications to Proceed without Prepayment of Fees and Costs and amended complaints specifying in what capacity they had named Burke as a defendant. (ECF No. 15 at 2). In addition, the undersigned ordered those plaintiffs who failed to sign the complaint to inform the Court in writing that they wished to proceed with this lawsuit or sign an amended complaint. (*Id.*) Plaintiffs were cautioned that failure to follow these directions within thirty days could result in a recommendation that the claim against Burke be dismissed for failure to prosecute.[4] (*Id.* at 2-3).

On May 29, 2015, Plaintiff Timothy Jackson filed an updated Application to Proceed without Prepayment of Fees and Costs along with an amended complaint. (ECF Nos. 24 & 26). In his amended complaint, Jackson alleges that Burke "overstepped his authority and ordered the correctional officers of the Western Regional Jail to place the plaintiffs on lockdown for (13) day's [*sic*]." (ECF No. 26 at 2). During the lockdown, Jackson claims that he was denied a shower for the first 100 hours, and he was also denied "hygene," cleaning supplies, and medical treatment for a staph infection that he developed as a result of the lockdown conditions. (*Id.* at 3). In addition, Jackson alleges that he was prevented from seeing visitors, communicating by mail or telephone, and using the law library and laundry services. (*Id.* at 4). On June 5, 2015, Plaintiff Norman Dillon filed an updated Application to Proceed without

---

[3] Objections to the PF & R were due by June 1, 2015. The only plaintiff to file objections was Tribble, and his objections were not filed until September 17, 2015. (ECF Nos. 42 & 43).

[4] The Clerk's Office mailed the May 15, 2015 PF & R and order to Plaintiffs at the Western Regional Jail. The mail came back as undeliverable for all Plaintiffs except Jackson. (ECF Nos. 17-23). Updated addresses were obtained by the Clerk's Office for Plaintiffs Tribble, Maynard, Slocum, Dillon, and Wray, and the documents were resent.

Prepayment of Fees and Costs, (ECF No. 27), and on June 18, 2015, Plaintiff Alton Tribble did the same, (ECF No. 28).

On June 29, 2015, the undersigned granted the applications filed by Jackson, Dillon, and Tribble. (ECF No. 29 at 2). In light of the amended complaint filed by Jackson, the undersigned also ordered the Clerk of Court to issue a summons for Burke and the United States Marshals Service to serve the summons and Jackson's amended complaint on Burke, or his designated agent for service, pursuant to Federal Rule of Civil Procedure 4. (*Id.* at 3). Dillon and Tribble were reminded that their complaints would not be served until they complied with the May 15, 2015 order. (*Id.*)

On July 20, 2015, the United States Marshals Service filed a Process Receipt and Return for the summons issued by the Clerk's Office at the undersigned's direction. (ECF No. 33). The return noted that the summons had been addressed to Burke and sent to the Authority by certified mail. (*Id.* at 1). However, delivery of the summons and complaint was not restricted to the addressee (Burke), and consequently, an employee of the Authority, Bethany Allred, signed and accepted the summons and amended complaint. (*Id.* at 4).

On August 4, 2015, Burke, through counsel, filed a Motion to Dismiss for Insufficient Service of Process pursuant to Federal Rule of Civil Procedure 12(b)(5). (ECF No. 34). In that motion, Burke claims that Plaintiffs made no attempt to serve the original complaint and that their attempt to serve the amended complaint was insufficient under Federal Rule of Civil Procedure 4 and West Virginia Rule of Civil Procedure 4 because the certified mail receipt was not restricted to the addressee. (*Id.* at 1-3). Furthermore, Burke asserts that he no longer worked for the Authority at the time that the summons and amended complaint were delivered there. (*Id.* at 4).

Ultimately, Burke avers that he should be dismissed from this action because he was not served within 120 days of the filing of the original complaint or amended complaint. (*Id.*)

On August 7, 2015, the undersigned issued an order notifying Plaintiffs that they had a right to respond to Burke's Motion to Dismiss for Insufficient Service of Process.[5] (ECF No. 36). On September 2, 2015, Tribble filed a Motion to Strike, Overrule and/or to Reserve Burke, which responded to Burke's motion to dismiss. (ECF No. 39). In his motion, Tribble maintains that service is adequate under "state and county" law where the summons and complaint are delivered to the defendant's "law enforcement agency of employ." (*Id.* at 1). Furthermore, Tribble contends that "Bethany Allred[,] who picked up [Burke's] mail[,] is authorized to receive and accept legal notices" on Burke's behalf. (*Id.* at 1-2). In addition, Tribble maintains that Burke "resides" at the Authority because he is "an agency of his place of employ as expressed by his title." (*Id.* at 2). For those reasons, Tribble requests that Burke's motion be stricken, and that if Burke requests "special service," then he either pay for the cost or the Court order the United States Marshals Service to serve Burke again. (*Id.*) Moreover, Tribble requests that the Court order "all involved and accused to further with disclose their liability coverage and bond providers with all contact information and policy numbers." (*Id.*)

Tribble has also filed a Motion to Certify a Class Action and to Desinate [*sic*] this as the Multidistrict HQ. (ECF No. 38). In that motion, Tribble asserts that Plaintiffs "represent a cross-section of about 150 persons victimized concurrently" by "the misconduct and harmful events" that have "happened before to numerous others

---

[5] The Clerk's Office was directed to mail a copy of the order to Plaintiffs. The copy sent to Jackson was returned as undeliverable. (ECF No. 37).

across West Virginia from West Virginia and elsewhere." (*Id.* at 1). Tribble claims that "the accused knowingly, willfully, and intentionally violated federal, state, and international human rights and treaty laws" when "the accused" denied inmates hygiene items, showers, recreation time, mail, visitors, medical and psychological treatment, and access to supervisory staff and internal grievance procedures during the lockdown. (*Id.* at 1-2). Moreover, Tribble alleges that "all accused falsified records and reports, and failed to properly report" these "illegal occurrences." (*Id.* at 2). Tribble asks the Court to certify a class action and designate "the instant district ... as the Multidistrict Litigation Headquarters." (*Id.*) He also requests that the Court grant him leave to "join and serve all of the entities for liability asserted and involved," although he does not name any specific entities or persons that he wishes to join. (*Id.*)

On the subject of insufficient service of process, Burke responds that Plaintiffs have failed to demonstrate that service of process was accomplished in a manner prescribed by Federal Rule of Civil Procedure 4. (ECF No. 40 at 4). Burke notes that "[s]ervice cannot be perfected upon him by delivering a summons and complaint to his former employer at his former business address." (*Id.*) With respect to Tribble's request to certify a class action, Burke points out that Tribble was the only plaintiff to respond to Burke's Motion to Dismiss, which indicates that "no other party is interested in pursuing this civil action, much less interested in representing a class of individuals." (ECF No. 41 at 2). In addition Burke asserts that class certification is inappropriate as Tribble has not clearly identified the purported class members. (*Id.*) Furthermore, Burke avers that Tribble, as a *pro se* plaintiff, cannot adequately represent the class and that a class cannot be certified in the Fourth Circuit where a *pro se* litigant intends to represent the class. (*Id.* at 3). Finally, Burke argues that

Tribble's allegations meet neither the commonality nor typicality prerequisites for certifying a class action, which are contained in Federal Rule of Civil Procedure 23.[6] (*Id.* at 6).

On September 22, 2015, recognizing that the United States Marshals Service had failed to adhere to West Virginia Rule of Civil Procedure 4 in its attempt to serve Burke via certified mail, the undersigned ordered the Authority to provide the Clerk of Court with Burke's last known residence address, or the name and address of any individual authorized to accept service on his behalf, within ten days. (ECF No. 44 at 1-2). Upon receiving that information, the Clerk of Court was instructed to issue a summons for Burke, and the United States Marshals Service was ordered to serve the summons and Jackson's amended complaint within twenty-one days of the issuance of the summons in the manner specified in federal and state rules. (*Id.* at 2).

## II.   Discussion

### A. Burke's Motion to Dismiss for Insufficient Service of Process and Tribble's Motion to Strike, Overrule, and/or to Reserve Burke

Federal Rule of Civil Procedure 4(e) sets forth the appropriate methods for serving an individual within a judicial district of the United States. The rule provides four ways to sufficiently accomplish service: (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; (2) "delivering a copy of the summons and of the complaint to the individual personally"; (3) "leaving a copy of each

---

[6] Tribble subsequently filed two documents on September 17, 2015: (1) Reply and Specific Objections to the Magistrate[] [Judge's] R & R, Seeking to Strike Immaterial Things, and Reply to Court Order Contemporaneously with other Submissions of Alton Tribble Presented Previously, (ECF No. 42); and Brief and/or Memoradum [*sic*] Supporting Denial of Motion to Dismiss of SRT Director Austin Burke and Opposing Magistrate [Judge's] R & R, (ECF No. 43). Both documents generally present Tribble's objections to the undersigned's May 15, 2015 PF & R.

[the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (4) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e). According to Federal Rule 4(c), when a plaintiff is authorized to proceed *in forma pauperis* under 28 U.S.C. 1915 (as in the instant action), the court must order the United States Marshal or Deputy Marshal to serve the summons and complaint. If service is not made on a defendant in one of the four ways described above within 120 days of the complaint being filed, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specific time." Fed. R. Civ. P. 4(m).[7] As referenced in Rule 4(m), a defendant may bring a motion pursuant to Federal Rule of Civil Procedure 12(b)(5) requesting that he be dismissed from the action for insufficient service of process. "When sufficiency of service is raised as a defense under Rule of Civil Procedure 12(b)(5), the plaintiff has the burden of establishing that service of process has been effectuated in conformity with Rule 4." *Rowe v. Clark*, No. 3:04-0681, 2011 WL 4345685, at *7 (S.D.W.Va. Aug. 19, 2011), *report and recommendation adopted by* 2011 WL 4345678 (S.D.W.Va. Sept. 15, 2011).

Here, the United States Marshals Service sent the summons and complaint by certified mail to Burke at the Authority's address. This type of service does not meet the requirements of methods two through four described above. Consequently, the undersigned turns to the method of service contained in Rule 4(e)(1). This Court is located in West Virginia; accordingly, the undersigned looks to Rule 4(d)(1) of the West

---

[7] Rule 4(m) goes on to state that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

Virginia Rules of Civil Procedure, which states that an individual may be served by:

> (A) Delivering a copy of the summons and complaint to the individual personally; or

> (B) Delivering a copy of the summons and complaint at the individual's dwelling place or usual place of abode to a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purport of the summons and complaint; or

> (C) Delivering a copy of the summons and complaint to an agent or attorney-in-fact authorized by appointment or statute to receive or accept service of the summons and complaint in the individual's behalf; or

> (D) The clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee; or

> (E) The clerk sending a copy of the summons and complaint by first class mail, postage prepaid, to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to Form 14 and a return envelope, postage prepaid, addressed to the clerk.

Although subsection (D) allows service by certified mail, service in this case was not accomplished in a manner that comports with West Virginia state law, because delivery of the summons and complaint was not ***restricted to Burke***. Contrary to Tribble's argument, nothing in Federal Rule of Civil Procedure 4 or West Virginia Rule of Civil Procedure 4 permits service to be accomplished by sending the summons and complaint by certified mail to a defendant's former employer. *See Rowe*, 2011 WL 4345685, at *7 (finding service of process insufficient where service was accepted by employee at jail where defendant was no longer employed). Moreover, Tribble has presented no evidence that Ms. Allred, who signed for the delivery, was authorized to receive or accept service on Burke's behalf. (ECF No. 39 at 1-2). To the contrary, it seems unlikely that an employee of a former employer would have Burke's authorization to accept service for him. *See Nhira v. Bowie State Univ.*, Civil Action

10

No. WMN-14-676, 2014 WL 6065998, at *2 (D. Md. Nov. 12, 2014) ("[T]here is no obligation on the part of an employer to forward summonses to former employees nor does an employer have the authority to accept service of process for former employees."). Finally, Tribble's contention that Burke "resides" at the Authority because he is "an agency of his place of employ as expressed by his title," is wholly unconvincing. (*Id.* at 2). Tribble has cited no authority for this proposition, and in any event, Burke was no longer employed at the Authority when service was attempted. (ECF No. 34 at 4); *see Causey v. Paitsel*, No. 4:13-cv-0970, 2014 WL 1400789, at *3 (D.S.C. Apr. 10, 2014) (recognizing that sending summons and complaint by mail to defendant's employer does not comport with Federal Rule of Civil Procedure 4). Accordingly, the undersigned **FINDS** that Burke was not served in accord with Federal Rule of Civil Procedure 4.

Notwithstanding this finding, the undersigned's September 22, 2015 order seeks to remedy the service of process issue and dismissal is not automatically required for insufficient service of process under Federal Rule of Civil Procedure 4(m).[8] Therefore, the undersigned **RECOMMENDS** that Burke's Motion to Dismiss for

---

[8] Although Burke contends in his motion to dismiss that Plaintiffs have failed to demonstrate good cause to justify an extension of time to accomplish service, the plain language of Rule 4(m) does not require a court to make a finding of good cause before allowing for an extension. Furthermore, the viability of the Fourth Circuit's holding in *Mendez v. Elliot*, 45 F.3d 75, 78-79 (4th Cir. 1995), that district courts cannot grant an extension to serve a defendant without good cause, has been in serious doubt for some time, and even questioned by the Fourth Circuit. *See, e.g., Morgan v. Sebelius*, Civil Action No. 3:09-1059, 2010 WL 1404100, at *1 (S.D.W.Va. Mar. 31, 2010); *Velcovich v. Consol Energy, Inc.*, No. 5:07CV113, 2008 WL 4415428, at *9 (N.D.W.Va. Sept. 25, 2008) (collecting unpublished cases from Fourth Circuit with holdings contrary to *Mendez*). In *Morgan*, Chief Judge Chambers found that the Court possessed "discretion to extend the 120-day window for service even if a plaintiff fails to show good cause for the delay." 2010 WL 1404100, at *2. Judge Chambers recognized that the current language of Rule 4(m) was significantly different than the language interpreted by the *Mendez* court, and that the Supreme Court noted in *Henderson v. United States* that the language of Rule 4(m) permits district courts to grant extensions for service even where no good cause is shown. *Id.* (citing 517 U.S. 654, 658 n.5, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996)).

Insufficient Service of Process be **DENIED, without prejudice**. If service cannot be accomplished as described in the undersigned's September 22, 2015 order, then Burke may raise his insufficient service defense again. In addition, because Tribble's Motion to Strike, Overrule, and/or to Reserve Burke lacks merit, the undersigned **RECOMMENDS** that the motion be **DENIED**.[9]

### B. Tribble's Motion to Certify a Class Action and to Designate this as the Multidistrict HQ

As discussed above, Tribble has filed a motion to certify a class action, alleging that he and his co-plaintiffs represent "a cross-section of about 150 persons victimized concurrently." (ECF No. 38 at 1). Tribble goes on to assert that the "misconduct and harmful events" alleged in this case have occurred to "numerous others across West Virginia." (*Id.*) He requests that the Court certify a class action, and that he and his co-plaintiffs be designated as the representatives of the class. (*Id.*)

Federal Rule of Civil Procedure 23(a) states that a class action may be maintained only if: (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." In addition, Rule 23(b) provides that a class action may be maintained only if the above requirements are met and one of the following three conditions are met:

> 1) prosecuting separate actions by or against individual class members would create a risk of:

---

[9] Insofar as Tribble asks that the Court order the United States Marshals Service to re-serve Burke, that request is **MOOT** in light of the undersigned's September 22, 2015 order. To the extent that Tribble asks to discover any insurance contracts entered into by Defendants, the undersigned finds that request is premature.

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

A plaintiff bears the burden of demonstrating that he is entitled to class certification under Rule 23. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006).

To begin, no class action complaint has been filed in this case. Indeed, neither the original complaint nor the amended complaint, both of which Tribble did not sign, alleges that any of Plaintiffs should be designated representatives of any purported class. More specifically, and contrary to the undersigned's May 15, 2015 order, Tribble has not filed an amended complaint at all, let alone a class action complaint naming

himself as a representative. Before a federal court is required to determine whether to certify an action as a class action, a person must sue or be sued as a class representative. Fed. R. Civ. P. 23(c)(1)(A). That has not happened in this case. As such, Tribble's request that a class action be certified is premature. In addition, as Burke aptly points out, the Fourth Circuit has held that "[i]t is plain error for a *pro se* inmate to represent other inmates in a class action." *Fowler v. Lee*, 18 F. App'x 164, 165 (4th Cir. 2001) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)). Because Tribble is proceeding *pro se*, Tribble would not be able to "adequately protect the interests of the class," as required by Rule 23(a)(4). *See Rutledge v. Lane*, 215 F.3d 1330, 2000 WL 689191, at *4 (7th Cir. May 25, 2000) (unpublished table decision). Moreover, Tribble has not asserted that he has attempted to find counsel to represent him or any purported class. Accordingly, certifying a class action would be plain error.

Even if the aforementioned issues are overlooked, Tribble has still not demonstrated that certification is appropriate under Rule 23. For instance, Tribble has failed to clearly define the class that he hopes to represent. To the extent that Tribble intends to generally represent detainees or prisoners from "across West Virginia," Tribble would not meet the prerequisites for certification contained in Rule 23(a)(2) and (3) because questions of fact would largely differ among the proposed class members as would the claims and defenses in each circumstance. Because Tribble has not established that he meets the requirements of Rule 23(a) for certification of a class action, the undersigned **RECOMMENDS** that Tribble's Motion to Certify a Class Action be **DENIED**.

As for Tribble's request that this Court designate this jurisdiction as the multidistrict "headquarters," Tribble is seemingly unaware of the difference between a

class action and multidistrict litigation. In any event, there is a special procedure for multidistrict litigation contained in 28 U.S.C. § 1407, of which Tribble has not availed himself. Accordingly, the undersigned **RECOMMENDS** that Tribble's Motion to Desinate [*sic*] this as the Multidistrict HQ be **DENIED**.[10]

### C. Failure to Prosecute and Failure to Follow the Court's Order

Finally, the undersigned *sua sponte* addresses those plaintiffs who have failed to prosecute this case and failed to follow the undersigned's May 2015 order. On May 15, 2015, the undersigned ordered Plaintiffs to take certain actions, including filing updated Applications to Proceed Without Prepayment of Fees and Costs and amended complaints. (ECF No. 15 at 2). The undersigned warned Plaintiffs that failure to follow these directions within thirty days could result in a recommendation that their claims be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41(b) and Local Rule of Civil Procedure 41.1. (*Id.* at 3). It appears that six Plaintiffs (Dillon, Jackson, Maynard, Slocum, Tribble, and Wray) received that order. Plaintiffs Johnson and Davis did not receive that order because they were no longer at the Western Regional Jail, where the order was sent, and they failed to provide the Court with updated addresses. Only three of Plaintiffs who received the order responded to it (Dillon, Jackson, and Tribble), and only one followed the undersigned's directions (Jackson).

Because Plaintiffs Davis, Johnson, Maynard, Slocum, and Wray have shown no interest in further prosecuting this case, as evidenced by either wholly failing to respond to the Court's May 2015 order, or neglecting to provide the Court with an

---

[10] To the extent that Tribble requests that the Court permit him leave to join and serve "all of the entities responsible for liability asserted and involved," he has not named any entities or persons that he wishes to join in this action.

updated address, and those plaintiffs have failed to follow a court order, the undersigned **RECOMMENDS** that their claims be **DISMISSED, without prejudice**.

### III.  <u>**Proposal and Recommendations**</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows:

1.  Burke's Motion to Dismiss for Insufficient Service of Process, (ECF No. 34), be **DENIED, without prejudice**;

2.  Tribble's Motion to Strike, Overrule and/or to Reserve Burke, (ECF No. 39), be **DENIED**;

3.  Tribble's Motion to Certify a Class Action and Desinate [*sic*] this as the Multidistrict HQ, (ECF No. 38), be **DENIED**; and

4.  The claims of Plaintiffs Jeremy A. Johnson, Duane Maynard, William Wray, Steven Davis, and Willie Slocum be **DISMISSED**, **without prejudice**.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiffs, Defendant Burke, and any counsel of record.

**FILED:** September 25, 2015

Cheryl A. Eifert
United States Magistrate Judge